Argued and submitted January 31, 2006; resubmitted en banc
January 10, affirmed April 25, 2007

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# THOMAS PATRICK FRIES,
*Defendant-Appellant.*

Coos County Circuit Court
03CR0773; A124253

158 P3d 10

Stephanie Hortsch argued the cause for appellant. On the brief were Peter A. Ozanne, Executive Director, Peter Gartlan, Chief Defender, and Monica L. Finch, Deputy Public Defender, Office of Public Defense Services.

Julie A. Smith, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Brewer, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Wollheim, Schuman, Ortega, Rosenblum, and Sercombe, Judges.

EDMONDS, J.

Armstrong, J., dissenting.

**EDMONDS, J.**

Defendant appeals from a conviction for possession of a controlled substance. ORS 475.840(3).[1] He makes two assignments of error: the denial of his motion for a judgment of acquittal on the ground that the evidence produced by the state was legally insufficient to convict him of possessing marijuana and the imposition of special conditions of probation based on facts that were not found by a jury beyond a reasonable doubt, admitted to, or stipulated to by defendant. We affirm.

According to the evidence adduced at trial, defendant was operating a vehicle with a male passenger in North Bend when the vehicle was observed by a police officer. As the officer followed the vehicle, it quickly pulled into two different private driveways, which the officer interpreted as a maneuver to avoid further attention. After defendant parked the vehicle in the second driveway, the officer stopped his vehicle along the opposite curb and approached defendant's vehicle. He inquired if the occupants were lost or lived at the address at which they had parked. Defendant replied in the negative. During that conversation, the officer observed multiple live marijuana plants in containers inside defendant's vehicle. The officer called for assistance, and eventually, both defendant and the passenger were arrested. Ultimately, a large aquarium with three buckets containing four live marijuana plants and a zip-loc bag containing less than one ounce of dried marijuana, two large rectangular pots containing two live marijuana plants, one tub/tote containing two live marijuana plants, and one "Sentry" safe containing nine individually rolled sandwich bags, each containing less than one ounce of marijuana, were seized from the interior of the vehicle.

In a subsequent interview with the police, defendant explained that his passenger, Albritton, had asked defendant to come to Albritton's apartment to help move Albritton's marijuana plants to Albritton's new residence. Defendant told the police that "[w]e loaded [the marijuana plants] up

---

[1] Defendant was convicted of violating *former* ORS 475.992 (2001), *renumbered as* ORS 475.840 (2005).

and were going to drive them back and drop them off at his place" when they encountered the police officer. The police also interviewed Albritton, who informed them that he was an Oregon Medical Marijuana Program patient, that he was "legal" to possess marijuana, and that he was taking the plants to his "soon to be caregiver's house." As a result of the above events, defendant was indicted on two counts of knowingly possessing a controlled substance. Defendant entered pleas of not guilty, and the case went to trial before the trial court without a jury.

At trial, the state offered the above evidence and rested. The defense called defendant as its first witness. Defendant conceded in his testimony that he helped load the marijuana plant containers into his vehicle, knowing that they contained marijuana plants. Later, defendant testified that he made only one trip with the marijuana plants from Albritton's apartment to his vehicle. When asked if he only took one plant out, defendant answered, "No. There was—I think it was—I don't know which one I helped move out. There was a couple of long things, and there was like three or four * * * in one long, big-type thing[.]" When asked if Albritton had permitted defendant to "independently * * * possess or * * * move the plants," defendant replied, "Well, he—he wouldn't let them out of his sight."

After the parties finished the evidentiary portion of the trial, defense counsel argued to the trial court that there was no evidence that defendant exercised "any independent control. It appears to have been, even by the State's evidence, all controlled by Mr. Albritton." The court inquired, "What about him loading up the stuff? He's moving it from Point A to Point B." Defense counsel interposed, "Under the direction of the possessor." Thereafter, the trial court found defendant not guilty of Count 1, which pertained to the possession of the seized dried marijuana, and guilty of Count 2, which pertained to the possession of the growing marijuana.

On appeal, defendant argues that, as a matter of law, he did not possess the marijuana plants under the above facts. In his view, he

> "helped an acquaintance, who had a medical marijuana card, move by loading marijuana plants into defendant's

vehicle and driving the person and his plants from one residence to another. Though possession of a controlled substance can be joint, here it was not. Defendant's acquaintance manifested exclusive control over his plants."

The state responds that

"[t]he record reflects that defendant physically carried several marijuana plants out of an apartment, placed them in his car, and drove with them in his car. Defendant's claim that he could not have possessed the plants because he moved them at the owner's request is unavailing. One can possess property without asserting an ownership interest in it so long as one asserts some sort of dominion or control over it, even if only temporarily and even if that dominion or control is not exclusive."

This case presents a question of statutory interpretation subject to the usual analytical template. Our sole task is to discern the legislature's intention. We undertake that task by first examining the text and context of the statute, which includes other provisions of the same statutory scheme and other related statutes. We also apply rules of statutory construction that bear directly on the interpretation of the statutory provision at issue. One such rule is that it is our responsibility to "declare what is, in terms or in substance, contained" in a statute. ORS 174.010. Under ORS 174.010, we lack the authority to "insert what has been omitted, or to omit what has been inserted[.]" Another such rule of statutory construction is that, when the legislature includes an express provision in one statute, but omits such a provision in another statute, it may be inferred that such an omission was deliberate. *Oregon Business Planning Council v. LCDC*, 290 Or 741, 749, 626 P2d 350 (1981).

Defendant was convicted under ORS 475.840(3). That statute provides that

"[i]t is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursu... it to, a valid prescription or order of a practitioner while a...ing in the course of professional practice or except as oth rwise authorized by ORS 475.005 to 475.285 and 475.840 t 475.980."

ORS 475.840(3) contains or refers to a number of terms that are defined by statute, including "controlled substance," ORS 475.005(6), "marijuana," ORS 475.005(16), "practitioner," ORS 475.005(18), "prescription," ORS 475.005(19), "knowingly," ORS 161.105(8), "intentionally," ORS 161.085(7), and "possess," ORS 161.015(9).

■    When the legislature provides a specific meaning for a word used in a statute, courts have no authority to add or subtract from that definition. *See, e.g.*, *State v. Jones*, 339 Or 438, 445, 121 P3d 657 (2005) (holding that, by using a very specific meaning of the words "oral communication," the legislature limited the reach of a statutory suppression remedy). ORS 475.005 does not include a definition of the word "possess" for purposes of ORS 475.840(3). However, in *State v. Daline*, 175 Or App 625, 631, 30 P3d 426 (2001), the defendant was charged with the crime of possession of a controlled substance, and we applied the definition found in ORS 161.015(9), as we had in several previous cases. ORS 161.015(9) provides that to " '[p]ossess' means to have physical possession or otherwise to exercise dominion or control over property." We explained in *Daline* that, "[b]ased on a plain reading of the statute, there are two ways in which a person can 'possess': (1) actual and (2) constructive. The first part of the statute states that a person possesses property if he or she has actual 'physical possession' of it." 175 Or App at 631.

■    Here, defendant's statements to the police and his testimony demonstrate that he had physical or actual possession of the marijuana plants within the meaning of ORS 475.840(3). ORS 161.015(9) makes clear that the word "possess" includes "hav[ing] physical possession" of an object. The ordinary meaning of the word "physical" in ORS 161.015(9), when understood in the context of the remaining words of the statute, means "of or relating to the body." *Webster's Third New Int'l Dictionary* 1706 (unabridged ed 2002). When defendant placed his hands on the container containing the marijuana plants and carried the container to his car, he physically possessed the marijuana plants within the meaning of the statute.

The fact that defendant may have possessed the plants under someone else's direction or control does not subtract from the fact that the plants were in his actual possession and were subject to his exercise of temporary control over them at that time. For instance, in *State v. Coria*, 39 Or App 507, 592 P2d 1057 (1979), the defendant was a passenger in a car driven by another person, and controlled substances were found inside an upholstery panel of the car. The defendant argued, in part, that he could not be convicted of actual possession of the heroin because he was not the driver of the car. Nonetheless, the court held that possession need not be exclusive in order for a person to be criminally responsible and may be exercised jointly with another person. Thus, in this case, as in *Coria*, a reasonable factfinder could find that one person (defendant) was in actual possession of the marijuana plants and the other (Albritton) in constructive possession of the plants, at the same time. Thus, unless some statutory exception authorized defendant's actual possession of the plants, he violated ORS 475.840(3) by knowingly picking up the container and transporting it to his car.

The dissent, however, concludes that defendant's physical contact with the marijuana was not "possession" within the meaning of ORS 161.015(9) because, in its view, Albritton never relinquished dominion or control over the container of plants to defendant and because defendant's handling of the container was not for defendant's benefit, but for the benefit of Albritton. In its view, "[d]efendant could not do anything with Albritton's container of plants while he carried the container under Albritton's direct supervision." 212 Or App at 234 (Armstrong, J., dissenting).[2]

---

[2] The dissent reads too much into our holding in *Daline*, 175 Or App at 627, in which the issue was whether an indictment that alleged that the defendant had "in his body a controlled substance, to-wit Heroin," alleged facts that constituted a crime. Following our holding in *State v. Downes*, 31 Or App 1183, 572 P2d 1328 (1977), we held that consumption of a controlled substance does not constitute possession of a controlled substance because a person can no longer exercise dominion or control over the substance once the substance is in the person's bloodstream. 175 Or App at 632. The facts in *Daline* and *Downes*, where the defendants no longer could exercise dominion or control over controlled substances once the substances had been consumed by them, are inapposite to the facts here, where defendant had the ability to control what happened to the marijuana plants once he picked them up. For instance, he could have put them into his car and driven off with them, leaving Albritton behind.

The dissent's reasoning is incorrect for two reasons. First, the dissent's reasoning fails to recognize that, once defendant acquired physical possession of the plants by picking up the container in Albritton's residence and carrying it out of the residence to defendant's vehicle, he had the physical ability to do anything with the container that he wished, including appropriating it to his own use. The fact that he elected not to act inconsistently with Albritton's direction does not obviate the fact that he physically possessed the plants when he picked up the container and transported it to his vehicle. His physical handling of the plants constituted the actual control and dominion over the plants that the dissent contends did not exist.

Second, neither ORS 161.015(9) nor ORS 475.840(3) requires that the exercise of physical possession of an object by a person be for the purpose of benefitting the possessor. The dissent's view of ORS 161.015(9) would add a requirement to the definition of possession in the statute that does not appear in the statute.[3] Moreover, if the legislature intended such a requirement, then it would have been unnecessary for it to have created the numerous statutory exemptions from criminal liability that exist for persons who are in actual or constructive possession of controlled substances.

There is an additional fact to consider in this case. For purposes of this case, the state assumes that Albritton was legally in possession of the plants when he asked defendant to carry the container to the car. The question becomes whether Albritton can confer his status upon defendant to provide defendant with a defense to the charge of possession of a controlled substance. The answer to that question is found in the provisions of ORS 475.005 to 475.285, which ORS 475.840(3) incorporates by reference, and the Oregon Medical Marijuana Act, ORS 475.300 to 475.346. ORS 475.125 provides exemptions from criminal liability for the possession of a controlled substance in ORS 475.840(3). In general, those exemptions refer to persons who are registered with the State Board of Pharmacy to possess controlled

---

[3] Under the dissent's reasoning, a drug runner or "mule" who shuttles cocaine between a supplier and an ultimate user as a favor to the supplier would have no criminal responsibility because his possession was for the benefit of others.

substances, including manufacturers, common carriers, and dispensers of controlled substances and their agents or employees. ORS 475.125. Of particular note, ORS 475.125(3)(c) exempts from registration "[a]n ultimate user or a person in possession of any controlled substance pursuant to a lawful order of a practitioner * * *." ORS 475.005(22) defines an "ultimate user," in part, as "a person who lawfully possesses a controlled substance *for the use of the person or the use of a member of the household of the person * * *.*" (Emphasis added.)

Similarly, the legislature has undertaken to define those individuals who can lawfully possess marijuana to assist the holder of a medical marijuana registry identification card. Under the Medical Marijuana Act, a registry identification cardholder may designate a single "primary caregiver" to assist the cardholder with the medical use of marijuana. ORS 475.306. A "designated primary caregiver" is "an individual 18 years of age or older who has significant responsibility for managing the well-being of a person who has been diagnosed with a debilitating medical condition and who is designated as such on that person's application for a registry identification card or in other written notification to the department." ORS 475.302(5). Under ORS 475.320(1)(a), a "registry identification cardholder or the designated primary caregiver of the cardholder may possess up to six mature marijuana plants and 24 ounces of usable marijuana."

The dissent contends, however, that "possession" does not include handling a controlled substance when "at least one person has and maintains lawful possession of the substance for its lawful purpose * * *." 212 Or App at 237 (Armstrong, J., dissenting). Although the dissent makes much of the fact that defendant possessed Albritton's marijuana for Albritton's benefit, it ignores two critical facts. First, if the dissent is correct—if "possession," as defined by ORS 161.015(9), does not encompass a person who actually possesses marijuana for the benefit of another—it would have been unnecessary for the legislature to enact a specific statute exempting a primary caregiver of a person possessing marijuana under the Act from criminal liability. Indeed,

Oregon's controlled substances laws expressly limit the persons who may assist with the use of medical marijuana to a single "designated primary caregiver." ORS 475.312 ("A person described in this section may have only one designated primary caregiver at any given time."); *see also* ORS 475.125(3)(c) and ORS 475.005(22) (limiting assistance with controlled substances to members of household of the ultimate user).

Second, the Act itself makes Albritton himself potentially criminally liable for delivering the marijuana to defendant—a person who is not in possession of a registry identification card—to be transported.[4] Albritton's immunity under the Act from the criminal laws regarding possession of controlled substances is subject to certain statutory limitations. Although Albritton could have designated a "primary caregiver" under ORS 475.312 to possess marijuana for medical purposes on his behalf, no statute gives him the legal authority to confer his immunity under the law upon defendant. Rather, ORS 475.316(1)(c) makes it unlawful for Albritton to deliver marijuana to any individual "who the person knows is not in possession of a registry identification card[.]"

In summary, this court has no authority to immunize defendant for his possession of the controlled substances involved in this case; only the legislature has that authority. The legislature's creation of certain statutory exemptions that are inapplicable to this case, and its silence with regard to other circumstances that could lend themselves to a legislative classification of immunity, is persuasive evidence of its intent. The legislature knows how to create exemptions to criminal responsibility for those who knowingly have physical possession of controlled substances under ORS 475.840(3); because it did not create an exemption that applies to the circumstances of defendant in this case, we must infer that the legislature's omission was deliberate. For all of the reasons expressed above, we conclude that the trial

---

[4] "Delivery" under the Medical Marijuana Act is defined by ORS 475.005(8), and means the "actual, constructive or attempted transfer, other than by administering or dispensing, from one person to another of a controlled substance, *whether or not there is an agency relationship*." (Emphasis added.) The transfer from Albritton to defendant (even assuming that defendant was acting on behalf of Albritton) would appear to constitute a "delivery" under the statute.

court correctly focused on the fact that defendant physically handled the marijuana plants as the basis of its ruling that he was unlawfully in possession of a controlled substance.

■ In defendant's second assignment of error, he challenges the imposition of special conditions of probation, conditions that include serving five custody units, submitting to a polygraph examination, refraining from knowingly associating with persons who use controlled substances illegally or from frequenting places where such substances are kept, refraining from associating with persons known to be engaged in criminal activities, and submitting to DNA testing. Defendant contends that, before those conditions could be imposed, he was entitled to a jury trial on the facts underlying the imposition of the conditions under the Sixth Amendment to the United States Constitution as interpreted in *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004). Moreover, he asserts that he was entitled to have those facts proved beyond a reasonable doubt. Defendant concedes, however, that he did not raise that issue to the trial court, but nonetheless requests that we review the issue as error apparent on the face of the record under ORAP 5.45.

Even if the claim of error qualified as error apparent on the face of the record (which we doubt is the case), we would not, under the circumstances of this case, exercise our discretion to review it. The trial court sentenced defendant to an 18-month period of probation subject to the above conditions commencing on March 1, 2004. That time period has since expired, and defendant offers no explanation why the issue regarding his conditions of probation is not moot. This court has in the past declined, and will continue to decline, to review issues when such review will result in advisory opinions. That appears to be what would occur here if we were to review defendant's second assignment of error.

Affirmed.

**ARMSTRONG, J.,** dissenting.

The majority concludes that defendant possessed marijuana, for purposes of ORS 475.840(3), when he carried a container with one or more of Albritton's growing marijuana plants from Albritton's apartment to defendant's car. It

therefore concludes that the trial court properly denied defendant's motion for a judgment of acquittal of the charge that he possessed growing marijuana plants. Because I believe that the evidence in the record in this case was insufficient to establish that defendant possessed Albritton's marijuana plants, I respectfully dissent.

The legislature has not defined the term "possess" for purposes of ORS chapter 475. However, we have considered the definition of "possess" in ORS 161.015(9) to be an appropriate definition of the term as used in ORS chapter 475. *See State v. Amaya*, 111 Or App 204, 206-07, 826 P2d 27 (1992). We most recently addressed the meaning of the term in *State v. Daline*, 175 Or App 625, 30 P3d 426 (2001):

> "ORS 161.015(9) defines 'possess' as 'hav[ing] physical possession or otherwise exercis[ing] dominion or control over property.' Based on a plain reading of the statute, there are two ways in which a person can 'possess': (1) actual and (2) constructive. The first part of the statute states that a person possesses property if he or she has actual 'physical possession' of it. The term 'possession' is not further defined in either ORS chapter 161 or in ORS chapter 475. Therefore, we give that word of common usage its plain, natural, and ordinary meaning. We first look at the dictionary definition of 'possession.' *Webster's Third New Int'l Dictionary*, 1770 (unabridged ed 1993), defines 'possession' as:

>> " '1 a : the act or condition of having in or taking into one's *control* or holding at one's disposal * * * b : actual physical *control* or occupancy of property by one who holds for himself and not as a servant of another without regard to his ownership and who has legal rights to assert interests in the property against all others having no better right than himself * * * 2 : something owned, occupied, or *controlled* : a thing possessed * * *[.]' (Emphasis added.)

> "Thus, 'possession' connotes the exercise of dominion or control; under the statute, one has physical possession of property only if he or she has actual, physical *control* over that property.

> "That understanding comports with the entire statutory text. As [the] defendants explain, 'By using the terms

"physical possession" followed by the phrase "or otherwise to exercise dominion or control," the legislature intended that "dominion or control" was also a necessary element of physical possession.'

"Actual possession is not the only method by which a person can 'possess' property under the statutory definition. The statute goes on to say that one can be in constructive possession of property if he or she 'otherwise exercise[s] dominion or control' over it. The same overarching legal principle applies to both methods [by] which a person can 'possess' property—that is the ability to control property. Therefore, if a person is not in *actual* physical control of the property, he or she can still 'possess' it if he or she otherwise exercises dominion or control similar to that of actual possession.

"* * * [C]ontrol is the gravamen of the statutory definition of 'possess' * * *."

175 Or App at 631-32 (emphasis in original; footnote and citation omitted).

The Supreme Court established the principle that control is the gravamen of possession for possession of controlled substances (PCS) offenses long before we decided *Daline. See State v. Oare*, 249 Or 597, 599, 439 P2d 885 (1968) ("Evidence of the control or the right to control is necessary to constructive possession."). In addition, the court recently reemphasized in *State v. Connally*, 339 Or 583, 591, 125 P3d 1254 (2005), the significance of dominion or control to the meaning of possession.

In *Connally*, the court used the ordinary dictionary meaning of possess to interpret a local ordinance on administrative searches. The analysis in *Connally* twice emphasized that the meaning of possess must incorporate the concept of dominion or control. *Id.* More specifically, the court cited *Webster's Third New Int'l Dictionary* 1770 (unabridged ed 2002), for the meaning of possession, as we did in *Daline*. The court adopted that dictionary's definition of the term as "the act or condition of having in or taking into one's control or holding at one's disposal," 339 Or at 591, thus affirming that control is necessary and defining possession by several closely related variations: having in one's control, taking into one's control, or holding at one's disposal.

A dictionary definition of dominion also helps illuminate the meaning of possession because, as we explained in *Daline*, ORS 161.015(9) allows for constructive possession, that is, for a person "*otherwise* to exercise *dominion or control*" over property in a manner that is circumstantially equivalent to physical possession. 175 Or App at 632 (emphasis added). The plain, ordinary meaning of dominion in this context is "the exercise of * * * supremacy or ascendancy" over something. *Webster's* at 672. Dominion encapsulates in a single word a variation of the definition of possession that the Supreme Court has emphasized, namely, that of "holding at one's disposal." That alternative definition of possession—the ability to determine disposition—is logically equivalent to the dictionary definition of dominion—the ability to exercise supremacy or ascendancy.

That background leads me to conclude that, in the totality of the circumstances here, defendant's admission of physical contact with a container of Albritton's marijuana plants was insufficient, without more, to establish that defendant physically possessed the plants. During defendant's physical contact with the plant container, Albritton continuously controlled and supervised the disposition of the plants for a lawful purpose. Albritton supervised the loading of defendant's car with Albritton's household possessions, including the plants. Defendant helped by carrying a heavy container of the plants to defendant's car in order to transport them from Albritton's former residence to his new residence.

The only inference that can be drawn from the evidence is that defendant physically handled the plants solely for Albritton's benefit. The record contains no evidence to permit a different inference. More pointedly, defendant's physical contact with the plants was not physical possession of them for purposes of the PCS offense because his contact with them was *not* for himself but, *rather*, as a servant of a *lawful* possessor of them, that is, under circumstances in which defendant had no ability "to assert interests in the property." *See Daline*, 175 Or App at 631 (citing *Webster's* at 1770 for a definition of possess that requires the opposite circumstances).

The majority disagrees. It concludes that defendant's act of carrying the container of plants while accompanied by Albritton, and under Albritton's direct supervision, constituted physical possession of the plants by defendant. However, the majority does not explain how doing that gave defendant any dominion or control over Albritton's plants. Defendant could not do anything with Albritton's container of plants while he carried the container under Albritton's direct supervision. Because control over the plants is the gravamen of possession under Oregon law, *see, e.g.*, *Daline*, 175 Or App at 631-32, defendant's act of carrying a container of Albritton's marijuana plants under Albritton's direct supervision cannot support a finding, on the record in this case, that defendant possessed the plants.[1]

I next address the issue of constructive possession, specifically whether the evidence of defendant handling a container of Albritton's plants and transporting Albritton's plants in his vehicle was sufficient to show that defendant possessed the plants under the doctrine of constructive possession. The circumstances of this case appear to rest in the delicate balance between two potentially competing principles that bear on constructive possession of a controlled substance. On one hand, mere presence in the proximity of a controlled substance is not sufficient to establish constructive possession. *Oare*, 249 Or at 599; *State v. Sosa-Vasquez*, 158 Or App 445, 448, 974 P2d 701 (1999); *see also State v. Miller*, 196 Or App 354, 359, 103 P3d 112 (2004) (mere presence at scene of manufacture of a controlled substance, analogized

---

[1] My conclusion on this point is consistent with *dictum* in *State v. Gordineer*, 229 Or 105, 366 P2d 161 (1961), on the interpretation of a statute that prohibited possession of intoxicating liquor by a minor. The court stated that it could not

"attribute to the legislature the intent to make a criminal of a minor child who, though knowing there is intoxicating liquor in a package, carries the liquor from an automobile into the home of a neighbor at the neighbor's request.

"In our opinion 'possession', as used in this statute, includes in addition to guilty knowledge the intent of the minor to possess full control over the liquor with the right to enjoy its consumption to the exclusion of others."

229 Or at 111. The court stated, in other words, that a minor who carried the liquor at the direction of an adult, that is, at the direction of someone who could lawfully possess it, could not be said to possess the liquor unless there were facts to support a finding that the minor intended to do something with the liquor other than carry it at the adult's direction. Although the *dictum* does not directly bear on the interpretation of the statute at issue here, it is consistent with my interpretation of it.

from mere presence at scene of crime, even with knowledge, is insufficient). On the other hand, evidence that a controlled substance was found in or on property owned or occupied by a defendant is ordinarily sufficient to support an inference of the defendant's right to control the substance. *State v. Nehl*, 19 Or App 590, 592, 528 P2d 555 (1974).

The state argues that defendant cannot distinguish his situation from those in which Oregon courts have held that the defendants had constructively possessed controlled substances. To the contrary, I find a significant basis for making a distinction. Review of PCS cases involving constructive possession reveals that they have always involved outright contraband over which *no* person exercised control for a *lawful* purpose and *no* person was in a position to relinquish—or to retain—that control at the material times.

The purpose of the doctrine of constructive possession for PCS offenses, as demonstrated in practice in the case law, is to give appropriate effect to circumstantial evidence of possession of a contraband substance when everyone involved denies the right or ability to control the contraband found in proximity to them. *See, e.g., State v. Williams*, 253 Or 646, 456 P2d 489 (1969) (the defendant deemed to possess contraband narcotics in container, with his name on prescription label, that rolled from beneath pillow on his bed); *State v. Coria*, 39 Or App 507, 592 P2d 1057, *rev den*, 286 Or 449 (1979) (the defendant, passenger in car, was deemed to possess heroin hidden in storage bin near back seat that was within his reach); *Nehl*, 19 Or App at 592-93 (husband and wife both deemed to possess five kilograms of contraband marijuana hidden in cabinets and closets of their home); *State v. Krohn*, 15 Or App 63, 514 P2d 1359 (1973) (the defendant deemed to possess contraband marijuana hidden in car he owned and was driving); *State v. Moore*, 14 Or App 268, 511 P2d 880 (1973) (the defendant deemed to possess contraband barbiturates in dresser drawer in his bedroom); *State v. Wikum*, 6 Or App 405, 488 P2d 815 (1971) (the defendant deemed to possess 66 pounds of contraband marijuana hidden throughout car he owned and was riding in); *State v. Montgomery*, 3 Or App 555, 474 P2d 780 (1970) (the defendant and his visitor deemed to possess one each of the two doses of heroin found on dresser in room that they occupied

when search occurred); *State v. Nasholm*, 2 Or App 385, 467 P2d 647 (1970) (the defendant deemed to possess contraband marijuana on table next to bed where he was sleeping when search occurred).

In each of the foregoing cases, evidence that a defendant controlled a place or space where *contraband* was found or had access to the *contraband* was sufficient to permit a factfinder to find that the defendant did or could control the substance. When the appellate courts have applied the doctrine of constructive possession to PCS offenses, the unstated assumption has been that no one exercised *lawful* dominion or control over the substance at issue. The cases have addressed whether the evidence showed that a substance that was contraband for everyone involved in the cases was connected to a defendant in such a way that the defendant could be found to exercise control over its use or disposition.

Conversely, and contrary to the state's view, the presence of another possessor of the controlled substance who exercised *lawful* control over it is a significant unprecedented circumstance. Under that circumstance, it is possible that a defendant *could* exercise control over the substance, even if nonexclusively, and therefore *could* possess it in violation of ORS 475.840(3). The question becomes, however, whether the lawful possessor in fact relinquished such control to the defendant.

The two cases on which the state primarily relies help me to illustrate the narrow distinction that I draw in this case. In *Coria*, we said that the right to control "need not be exclusive" and "may be exercised jointly with other persons." 39 Or App at 511. That opinion nonetheless reinforces the distinction that I make here because it dealt with possession of outright contraband—heroin—that was hidden in a rear seat compartment of a rental car during a long trip under circumstances that involved other evidence of drug trafficking. We affirmed the trial court's conclusion that the evidence of access to the heroin's hidden location showed an ability of more than one occupant to control the disposition of the heroin for its illegal purpose and constituted "possession" with respect to those occupants.

I agree with the state that, if one person's access to the heroin had been exclusive in *Coria*, then that person

would have been the only person who could have been convicted of PCS. I also agree that joint access to the contraband, that no one in the car could lawfully possess, implied a joint right to control the contraband that could have been exercised by each of several people and would have been sufficient to show possession by each. *Coria* illustrates the general rule that joint control of contraband that has no lawful possessor can be sufficient to attribute possession to more than one person. Without disturbing that rule, I conclude that, when at least one person has and maintains lawful possession of the substance for its lawful purpose, and the state makes no factual showing that the defendant had or exercised some right to control the substance, then the "joint control" or "nonexclusive control" that may prove the element of possession is not present.

The state also relies on *State v. Cossett*, 34 Or App 113, 578 P2d 423, *rev den*, 283 Or 235 (1978), to argue in the alternative that defendant at least had custody of the plants. In *Cossett*, the defendant admitted that he had custody of obscene material located on the premises of a company of which he was president. He argued that custody was not sufficient to satisfy the element of possession. We concluded that the evidence was sufficient to establish that the defendant possessed obscene material because the material "was located in a cabinet behind [the] defendant's desk, in his office, in the warehouse owned by the corporation of which [the] defendant is part owner." *Id.* at 116. We dismissed the argument that we should distinguish custody from possession because custody was not the relevant concept. *Id.*

Custody similarly is not a relevant concept in this case. Based on the more recent case law on possession discussed above, *Cossett* can be distinguished from this case on the ground that the defendant there relied on labels rather than on the relevant concept, which was whether the defendant could be found to have exercised dominion or control over the obscene material. The defendant in *Cossett* may have been trying to distinguish custody from ownership. More recent case law makes clear that possession involves "physical control [that is] without regard to * * * ownership." *Daline*, 175 Or App at 631 (citing *Webster's* definition of "possess"). That understanding is congruent with *Cossett's* implication that the relevant comparison was not between custody

and ownership. In *Cossett*, we concluded that evidence concerning the storage location of obscene material that no one legally possessed—in a cabinet near a desk in the defendant's office, all under the defendant's control—was sufficient for a factfinder to reasonably infer that the defendant exercised dominion or control over the material. The facts showed possession by the defendant alone, which is the second basis on which *Cossett* is distinguishable from the circumstances at issue here.

Our case law requires, in effect, a showing of functional, rather than merely technical, dominion or control to prove possession for PCS offenses. An example where functional control was lacking, as it is here, arose in *State v. Downes*, 31 Or App 1183, 572 P2d 1328 (1977). There we considered whether a defendant could be guilty of illegal drug possession based on an undercover officer's testimony that he saw someone inject the drug into the defendant's bloodstream. The state argued that the officer's observation of the injection was proof that the defendant possessed the drug. We rejected that argument: "Obviously, after a drug is ingested or injected into the human body, the host body can no longer exercise dominion or control over it." *Id.* at 1186. As a result, the facts could not constitute the charged offense, a variation of PCS. In 2001, we reaffirmed both of the holdings of *Downes*: that dominion or control is necessary to possession, and that evidence of a drug circulating in a user's bloodstream is not evidence of his dominion or control over the substance. *Daline*, 175 Or App at 631-32. The lack of dominion or control under those circumstances is a striking example of how facts that undeniably demonstrate close proximity, direct physical contact, and mobility of the controlled substance that is limited to the defendant's own mobility, might not functionally satisfy the possession element of a PCS offense.

Here, viewing the evidence in the light most favorable to the state, the state did not show that Albritton relinquished his control of the marijuana plants at any time such that defendant's handling and transporting of them gave defendant an ability to control their disposition. The marijuana plants were never outright contraband, and Albritton never ceded to defendant any right to control or dispose of them. In showing that defendant transported the plants with

Albritton as his passenger, the state demonstrated only that defendant undertook to deliver the plants to Albritton's new residence at Albritton's direction. The limited extent of defendant's evasive tactics when he saw a police car—namely, turning around in a stranger's driveway and parking in another stranger's driveway—does not show that defendant had gained an ability to control or dispose of the plants. Defendant's task remained at all times to deliver the plants to Albritton's new residence under Albritton's personal supervision. Nor did defendant's stop at Safeway to permit Albritton to purchase supplies for a lawful grow operation contribute to an inference of defendant's dominion or control over the plants. The record does not contain facts that show how defendant exercised even a nonexclusive right to control the plants. Hence, the evidence was insufficient to permit a factfinder to find that defendant constructively possessed the marijuana plants.

The majority contends that my interpretation of ORS 475.840(3) conflicts with the regulatory regime established by the Oregon Medical Marijuana Act (OMMA). It does not. The OMMA specifies circumstances in which people who otherwise possess, deliver, or manufacture marijuana will not be subject to criminal liability for that conduct. Because I conclude that defendant's conduct in connection with Albritton's marijuana plants cannot support a finding that defendant possessed Albritton's plants, as possession is defined under Oregon law, the OMMA simply has no bearing on the case.

In summary, I conclude that the evidence in this case of defendant's handling and transporting growing marijuana plants while they were lawfully possessed by a person who maintained dominion and control of them, was insufficient to support a finding that defendant possessed them under the PCS offense defined in ORS 475.840(3). The trial court erred in concluding that the evidence was sufficient to show that defendant had the marijuana plants in his control, took them into his control, or held them at his disposal. I respectfully dissent from the majority's contrary conclusion.

Wollheim, Schuman, and Rosenblum, JJ., join in this dissent.