The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number:_____

Filing Date: June 12, 2025

**No. A-1-CA-41721**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**STEPHEN R. FRAZIER,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Angie K. Schneider, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Michael J. Thomas, Assistant Solicitor General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**OPINION**

**YOHALEM, Judge.**

{1}     Defendant Stephen Frazier is charged with possession of a controlled substance, contrary to NMSA 1978, Section 30-31-23(A) (2019, amended 2021).[1] The State appeals the district court's order suppressing the evidence of fentanyl pills seized by law enforcement under the plain view exception to the warrant requirement. Concluding that the State failed to establish probable cause to believe that Defendant's possession of fentanyl pills was unlawful, rather than lawfully possessed pursuant to a prescription or practitioner's order, the district court suppressed the evidence. The State argues: (1) the officer's testimony at the suppression hearing that he recognized the pills as fentanyl and that they were in an aftermarket container was sufficient to establish that it was "immediately apparent" to the officer that the pills were contraband; and (2) a prescription or practitioner's order is an affirmative defense, and not an element of the crime, and therefore the officer need not establish at the suppression hearing that he had a reasonable belief that the pills were possessed without a prescription. We reject both arguments and agree with the district court that the State failed to establish probable cause at the suppression hearing. Under our whole record standard of appellate review, however,

---

[1]Although the events at issue occurred before the amendment of this statute in 2021, the language relevant to this opinion was not changed. We therefore cite to the current version of the statute, as amended in 2021.

we must consider whether the officer's affidavit, added to the record after the suppression hearing, was sufficient to establish probable cause. Because the subsequent affidavit fills the gap in the evidence of probable cause identified by the district court, we reverse and remand for trial.

**BACKGROUND**

{2}    Prior to trial, Defendant filed a motion to suppress the fentanyl pills seized by law enforcement from his truck. Defendant claimed that law enforcement did not have probable cause to seize the fentanyl pills without a warrant. The officer who performed the search was the sole witness at the suppression hearing. He testified to his training and experience in recognizing fentanyl pills, and to the following events leading to the seizure of the pills on September 25, 2022.

{3}    The officer testified that he recognized Defendant's truck from previous encounters as Defendant passed by the officer on the opposite side of the road. The officer ran Defendant's name through a police database to check for a warrant. The database showed that there was an active warrant for Defendant's arrest. Intending to stop Defendant and arrest him on the warrant, the officer turned around to pursue Defendant.[2]

---

[2]The officer later discovered that the information from his computer system that Defendant had an active warrant for his arrest was incorrect. The search at issue here was therefore conceded by both parties to be a warrantless search, and not a search incident to an arrest.

{4}     Defendant pulled off the road after passing the officer, and parked in a parking lot adjacent to the road. The officer pulled into the lot, and parked near Defendant's truck. The officer then approached Defendant's truck on foot from the passenger side. Defendant was sitting in the driver's seat, behind the wheel, looking out the driver's side window in the opposite direction and apparently did not see the officer approach.

{5}     Defendant's truck was a large "white Ford truck [that was] lifted, [had] big tires and [was] pretty high [up off the ground]." The officer testified that the windows were "kind of . . . at [his] eye level," allowing him to look through the passenger side window toward the driver's seat, where he noticed a clear plastic tube-shaped container three or four inches long on Defendant's lap. The district court found the officer's description of the container to be consistent with commonly used aftermarket containers for medication. The officer testified that he was able to observe blue pills inside the clear container, and that he immediately recognized the pills as fentanyl based on his training and experience.

{6}     Having made that identification of the pills, the officer immediately opened the passenger side door, seized the fentanyl pills, placed Defendant in handcuffs, and

arrested him for possession of fentanyl, a Schedule II controlled substance, *see* § 30-31-7(A)(2)(f), a violation of Section 30-31-23(A).[3]

{7} The district court granted the motion to suppress after taking the matter under advisement, explaining in extensive written findings of fact and conclusions of law that although the officer testified that he recognized the pills as fentanyl, it is not unlawful for a person to possess a controlled substance if the substance "was obtained pursuant to a valid prescription or order of a practitioner." *Id.* The court concluded that the law requires that an officer "must acquire information establishing probable cause to believe that an item is possessed unlawfully before seizing it." Looking to the circumstances in this case, the court found that "prescription medication, in pill form, often comes prescribed in clear tube[-shaped] containers, about [three] inches in length, and small diameter," exactly like the container in which these pills were observed by the officer. The district court noted that possession of pills in aftermarket bottles (like the one described by the officer) is not illegal. In the absence of any evidence in the record explaining the officer's belief that Defendant possessed the pills unlawfully, the court concluded that the State failed to meet its burden of establishing that the officer had probable cause to

---

[3]The existence of exigent circumstances is not at issue in this appeal. The officer testified that because the pills were in Defendant's lap, he feared that Defendant might attempt to swallow the pills and either harm himself or destroy evidence of a crime. The sufficiency of this evidence to establish exigent circumstances has not been challenged.

seize the pills without a warrant. The court found, "[t]he record is void of any facts or circumstances indicating that [the officer] knew the Defendant was in possession of fentanyl, at the moment of seizure, *without a prescription or order of practitioner.*" Determining that the State had not met its burden of proving probable cause to seize the pills without a warrant, the district court granted Defendant's motion to suppress. The State appeals.

**DISCUSSION**

{8} Defendant's motion to suppress arose in the context of a warrantless seizure of fentanyl pills from Defendant's truck. Absent a warrant, "the ultimate question is whether the search or seizure was reasonable." *State v. Williams*, 1994-NMSC-050, ¶ 10, 117 N.M. 551, 874 P.2d 12 (citation omitted), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. There is a presumption that warrantless searches and seizures, conducted outside the judicial process, are unreasonable. *See State v. Weidner*, 2007-NMCA-063, ¶ 6, 141 N.M. 582, 158 P.3d 1025. The State bears the burden of overcoming that presumption. *Id.* In order to prove that a warrantless search or seizure was reasonable, the State must introduce evidence showing that the search or seizure is supported by a recognized exception to the warrant requirement. *Id.*

{9} In this case, we analyze the officer's warrantless seizure of the fentanyl pills from Defendant's truck under the plain view doctrine's exception to the warrant

requirement. *See State v. Ochoa*, 2004-NMSC-023, ¶ 9, 135 N.M. 781, 93 P.3d 1286. To establish that a warrantless seizure was justified under the plain view doctrine, the State must show that (1) "the police officer was lawfully positioned when the evidence was observed"; and (2) "the incriminating nature of the evidence was immediately apparent, such that the officer had probable cause to believe that the article seized was evidence of a crime." *Id.* The parties do not dispute that the officer was "lawfully positioned" when he first observed the fentanyl pills on Defendant's lap. We therefore review only the second prong of the plain view doctrine: whether "the incriminating nature of the evidence was immediately apparent, such that" the officer "had probable cause to believe that the [fentanyl pills were] evidence of a crime." *Ochoa*, 2004-NMSC-023, ¶ 9.

**I.      The Officer Did Not Have Probable Cause to Believe Defendant Possessed the Pills Unlawfully**

**A.      Standard of Review on Appeal**

{10}      "The constitutionality of a search and seizure is a mixed question of law and fact which we review de novo." *Id.* ¶ 5; *see also State v. Martinez*, 2018-NMSC-007, ¶ 8, 410 P.3d 186 (holding that an appellate court makes "a de novo determination of the constitutional reasonableness of the search or seizure"). We review the district court's application of the law to the facts de novo as well, *see id.*, while viewing the evidence. *See State v. Harbison*, 2007-NMSC-016, ¶ 8, 141 N.M. 392, 156 P.3d 30.

**B.      The Probable Cause Standard**

{11}      When the State claims that a warrantless seizure of an item was justified under the plain view exception to the warrant requirement, the State bears the burden of establishing that it was immediately apparent to the law enforcement officer before seizing the item that its possession or use was unlawful, "such that the officer had probable cause to believe that the article seized was evidence of a crime." *Ochoa*, 2004-NMSC-023, ¶ 9. "There are no bright-line, hard-and-fast rules for determining probable cause," but our Supreme Court has described "the degree of proof necessary to establish probable cause" as "more than a suspicion or possibility but less than a certainty of proof." *State v. Evans*, 2009-NMSC-027, ¶ 11, 146 N.M. 319, 210 P.3d 216 (internal quotation marks and citation omitted). Under the law governing probable cause, "[a]n officer must acquire information establishing probable cause to believe that an item is possessed unlawfully *before* seizing it." *State v. Sanchez*, 2015-NMCA-084, ¶ 14, 355 P.3d 795 (emphasis added).

**C.      The Evidence at the Suppression Hearing Does Not Establish Probable Cause to Believe Defendant Possessed the Pills Unlawfully**

{12}      We begin by reviewing the district court's findings of fact. As we previously noted, the district court accepted the officer's testimony that the pills were fentanyl, a schedule II substance. The court found that the clear container that the officer described holding the pills was a common type of aftermarket container often used to hold prescription pills. Finding that possession of prescription pills is common,

the court noted that our laws do not prohibit the possession of prescription pills in an aftermarket container without a prescription label. *See Sanchez*, 2015-NMCA-084, ¶ 15 (concluding that these facts concerning prescription pills are matters of common, general knowledge); *see also State v. Ortiz*, 2023-NMSC-026, ¶ 25, 539 P.3d 262 (providing that for a fact to be properly subject to judicial notice, "[t]he matter must be known, that is well established and authoritatively settled"). The State does not challenge the court's findings in this regard. We agree that they are supported by the record, and we view them in the light most favorable to Defendant.

{13}     The district court relied on this Court's decisions in *Sanchez*, 2015-NMCA-084, and in *State v. Moran*, 2008-NMCA-160, 145 N.M. 297, 197 P.3d 1079, cases that address the seizure of an item under the plain view exception when the item seized can be possessed lawfully under some circumstances. Both *Sanchez* and *Moran* hold that when an item in plain view might either be contraband, or be lawfully in the possession of the suspect, an officer must identify to the court the circumstances that made it reasonably apparent to the officer that the item was contraband in order to establish that the officer had probable cause for the seizure. *See Sanchez*, 2015-NMCA-084, ¶ 17 (describing the evidence needed to establish that it was "immediately apparent" to the officer that a seized item was contraband).

{14}     In *Sanchez*, while conducting a traffic stop, the officer observed two pills in a clear plastic bag on the floorboard of the vehicle. *Id.* ¶¶ 2-4. We noted in *Sanchez*

that pills may also have "common, noncriminal use" when prescribed by a doctor. *Id.* ¶ 17. Finding that "the mere observation of pills in an aftermarket container is equally consistent with noncriminal activity as with criminal activity," *id.* ¶ 15 (internal quotation marks and citation omitted), we concluded that this evidence supported only a suspicion that the pills were contraband, and not the probability that they were contraband required to establish probable cause. *See id.* ¶¶ 14, 17. Additional evidence was needed to support an officer's reasonable belief that the pills are contraband in order to support their seizure without a warrant under the plain view doctrine. *Id.* ¶ 17. We reversed the district's court order denying suppression of the evidence. *Id.* ¶ 27.

{15}   In *Moran*, this Court concluded that officers lacked probable cause to seize protected animal parts in plain view in a suspect's home. *See* 2008-NMCA-160, ¶¶ 14-15. *Moran* concludes that "mere suspicion about an ordinary object, which has common, non-criminal uses, will not support probable cause for its seizure." *Id.* ¶ 10 (internal quotation marks and citation omitted). The statute allegedly violated in *Moran*, like the possession of a controlled substance statute here, made possession of protected animal parts criminal, absent a permit, license or certificate. *Id.* ¶ 11. Without any testimony as to particular facts or circumstances beyond mere possession sufficient to create a reasonable belief the suspect did not have a permit, license or certificate, this Court held that the officers had only a "mere suspicion"

the animal parts were contraband. *Id.* ¶ 12 (internal quotation marks and citation omitted).

{16} The circumstances testified to by the officer at the suppression hearing in this case—the observation of fentanyl pills in an aftermarket container commonly used for prescription medication—suggest that the fentanyl pills observed in plain view were equally likely to be lawfully possessed prescription medication as they were to be contraband. We agree with the district court that equally balanced evidence gives the officer nothing more than "a suspicion or [a] possibility" that a crime is being committed. *See Sanchez*, 2015-NMCA-084, ¶¶ 14, 15, 24 (determining that the fact that the pills were in an "aftermarket" container and that the defendant tried to hide the pills were facts that equally support criminal and noncriminal activity (internal quotation marks and citation omitted)). As we have already noted, "[t]here are no bright-line, hard-and-fast rules for determining probable cause, but the degree of proof necessary to establish probable cause is more than a suspicion or possibility but less than a certainty of proof." *Evans*, 2009-NMSC-027, ¶ 11 (internal quotation marks and citation omitted). The district court, therefore, correctly concluded that because "[t]he record is void of any facts or circumstances indicating that [the officer had a reasonable belief] Defendant was in possession of fentanyl, at the moment of seizure, without prescription or order of [a] practitioner," the State failed to carry its burden of establishing probable cause that a crime was being committed.

## II. A Defendant is Not Required to Offer Evidence of a Medical Prescription at a Suppression Hearing to Rebut Probable Cause

{17}  The State advances a novel legal theory regarding Section 30-31-23(A)'s exception to the crime of possession of a controlled substance when the substance "was obtained pursuant to a valid prescription or order of a practitioner." The State contends that because exceptions and exemptions to criminal statutes are affirmative defenses, which a defendant is required to prove at trial, and not elements of the subject crime, the State need not *disprove* the existence of a prescription to establish probable cause that a defendant possessed the pills unlawfully. The State essentially asks us to shift the burden onto the defendant at the suppression hearing to offer evidence of a valid prescription.

{18}  Although the State is correct that the burden is on the defendant at trial to introduce evidence concerning lawful possession of a controlled substance pursuant to a prescription, *see* NMSA 1978, § 30-31-37 (1972), we are not persuaded that the rules governing the burden of production at trial have any relevance to the application of the constitutional principles governing a warrantless seizure when a defendant moves to suppress evidence, claiming it was seized without probable cause.

{19}  Section 30-31-23(A) makes a clear exception to what is otherwise criminal behavior when a person possesses a controlled substance pursuant to a valid

prescription: such possession is not a crime. Section 30-31-23 states, in relevant part, as follows:

> A.      It is unlawful for a person intentionally to possess a controlled substance unless the substance was obtained pursuant to a valid prescription or order of a practitioner while acting in the course of professional practice or except as otherwise authorized by the Controlled Substances Act.

{20}     Placing the burden on a defendant to prove the application of an exception to a criminal statute—rather than requiring the state to prove the negative of the matter—recognizes that whether the exemption applies "is a matter peculiarly within [the defendant's] knowledge and with respect to which [the defendant] can be fairly expected to adduce the proof." *United States v. Rowlette*, 397 F.2d 475, 479 (7th Cir. 1968); *see also* Uniform Model Penal Code, § 1.12 (3)(c) (West 2023) (giving the same justification for placing the burden at trial on defendant).

{21}     The State's argument that our law on the burden of proof applies with even greater force at a suppression hearing overlooks the fact that the district court is asked to address completely different issues at a suppression hearing. The State argues "the standard is *less* at a suppression hearing at which the State must establish merely that the officer had probable cause for the subject search or seizure." The issue at a suppression hearing, however, is not whether the defendant is guilty of the crime charged: the question is whether the seizure of evidence by law enforcement complied with constitutional principles that protect against unreasonable searches

and seizures. Both the federal constitution and our state constitution presume that warrantless searches are unreasonable. *See State v. Gutierrez*, 2004-NMCA-081, ¶ 6, 136 N.M. 18, 94 P.3d 18. As already discussed, to justify a warrantless search, the State has the burden to prove that the "seizure was justified by an exception to the warrant requirement." *Id.* In the context of the plain view exception, that includes evidence that the law enforcement officer had adequate grounds to believe that an item was possessed *unlawfully* before seizing it. *See Sanchez*, 2015-NMCA-084, ¶ 14. The criminal nature of the conduct must be "immediately apparent" to law enforcement prior to the seizure, when, as here, the State relies on the plain view doctrine to justify seizure of evidence without a warrant. *Id.* ¶ 13. Subsequent proof that a crime was or was not in fact committed is not relevant to whether the warrantless seizure was constitutional. Only probable cause based on the officer's knowledge *at the moment of seizure* is sufficient to justify such a significant invasion of the constitutional right to be secure against unreasonable searches and seizures.

{22}     We conclude that the district court applied the correct analysis when it determined whether the officer's seizure of the pills was unconstitutional. It considered whether law enforcement had probable cause at the time of the seizure to reasonably believe a crime was occurring. "When a defendant challenges the validity of a search, the [s]tate bears the burden of proving facts that justify a warrantless search." *State v. Pittman*, 2006-NMCA-006, ¶ 14, 139 N.M. 29, 127

P.3d 1116. Switching the burden of producing a prescription to the defendant to prove that, in fact, the possession was lawful, may make sense when guilt or innocence is at issue and the defendant has time to collect evidence and to present it through counsel. It makes no sense at the suppression hearing where the court's role is to evaluate the information reasonably known to the officer at the time of the seizure.

**III.    The Affidavit of the Officer, Submitted After the Suppression Hearing, Provides Sufficient Evidence That He Had Probable Cause to Believe That the Fentanyl Pills Were Contraband Prior to the Seizure**

{23}    Considering only the facts that the State presented during the hearing on Defendant's motion to suppress—that Defendant had a clear plastic container with some blue pills that the officer believed were fentanyl—we agree with the district court that the officer did not have probable cause to seize the pills. "The government has a heavy burden when it seeks to justify warrantless arrests and searches," and it did not present a reasonable basis sufficient to establish probable cause that the pills were contraband. *See State v. Valencia Olaya*, 1987-NMCA-040, ¶ 24, 105 N.M. 690, 736 P.2d 495.

{24}    A few days after the suppression hearing, however, the State submitted two affidavits to the district court as attachments to a motion to reconsider the suppression ruling. The district court denied the motion to reconsider. The State, the

Appellant here, does not ask us to decide on appeal whether the district court properly denied the motion to reconsider. We therefore do not address this issue.

{25} This Court is required, however, under our standard of review, to consider all evidence in the record when deciding whether a motion to suppress seized evidence should be granted or denied, even if that evidence was not available to the district court at the suppression hearing. *See Ortiz*, 2023-NMSC-026, ¶ 7 ("Rather than being limited to the record made on a motion to suppress, appellate courts 'may review the entire record to determine whether there was sufficient evidence to support the trial court's denial of the motion to suppress.'" (quoting *State v. Monafo*, 2016-NMCA-092, ¶ 10, 384 P.3d 134)). This unusual, broader scope of appellate review is sanctioned by our Supreme Court in *State v. Martinez*, 1980-NMSC-066, 94 N.M. 436, 612 P.2d 228, because of the importance of the constitutional rights at issue. The Court states that it is adopting this broader scope of appellate review in order to allow the appellate court "to truly and fully determine the legality or illegality of an arrest or search." *Id.* ¶ 17.

{26} Applying our whole record standard of review, we consider whether the affidavits submitted by the State after the suppression hearing provide sufficient evidence that the officer had probable cause to believe Defendant did not possess the pills pursuant to a prescription or practitioner's order. The affidavit of the officer attached to the motion for reconsideration offered an explanation, for the first time,

of why the officer reasonably believed that Defendant's fentanyl pills were not prescription medication. The officer's affidavit begins by describing his extensive training in illegal substance investigations. He reports that in fiscal year 2022 alone, he had been involved in thirty-two felony investigations of controlled substances, including investigations involving possession of blue fentanyl pills. The officer stated that he knew from his training and experience that fentanyl "is prescribed in a patch form and also used in a hospital setting in a liquid form and not in a pill form." The officer stated that he has never "encountered any subject with a fentanyl prescription" in the form of blue pills. The officer also stated that, based on his knowledge from his previous encounters with Defendant, Defendant is addicted to opioids. We conclude that this additional information about the basis for the officer's belief that the pills were contraband, together with his observations of the blue pills in a clear plastic container, is sufficient to establish that the officer had probable cause to believe Defendant's fentanyl pills were not possessed pursuant to a prescription prior to seizing them. *See Sanchez*, 2015-NMCA-084, ¶ 17 (suggesting that prior interactions with a defendant and knowledge of their drug use support a determination of probable cause). Based on our whole record review, we reverse the district court's decision suppressing the evidence.

**CONCLUSION**

{27}    For the reasons stated, we reverse the district court's grant of Defendant's motion to suppress the fentanyl evidence and remand to the district court for further proceedings consistent with this opinion.

{28}    **IT IS SO ORDERED.**

_____
**JANE B. YOHALEM, Judge**

**WE CONCUR:**

_____
**GERALD E. BACA, Judge**

_____
**KATHERINE A. WRAY, Judge**