Argued and submitted August 31, 2007, supplemental judgment ordering
restitution vacated; otherwise affirmed April 16, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CARLENA E. BISCOTTI,
*Defendant-Appellant.*

Multnomah County Circuit Court
040532669; A127608

182 P3d 269

David Ferry, Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter A. Ozanne, Executive Director, Office of Public Defense Services, and Peter Gartlan, Chief Defender, Legal Services Division.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Ortega, Judge.

LANDAU, P. J.

## LANDAU, P. J.

ORS 137.106(1)(b) provides that, for "good cause," the trial court may extend the time within which it may enter judgment requiring a defendant to pay restitution. At issue in this case is what constitutes "good cause." The court concluded that the state's admitted carelessness in failing to prove restitution earlier amounts to "good cause." Defendant appeals, arguing that the state's carelessness cannot amount to good cause for a delay. We agree with defendant, vacate the order of restitution, and otherwise affirm.

The relevant facts are undisputed. Defendant stole from her employer by using customers' credit card information to purchase items for herself by adding them to the customers' orders. She was charged with and pleaded guilty to first-degree theft, ORS 164.055, and identity theft, ORS 165.800. At sentencing, the state asked for an order of restitution, but asked for 30 days to provide the court with evidence of an appropriate amount. The trial court agreed and entered the judgment of conviction ordering defendant to pay restitution to her employer in an amount to be determined within 30 days.

The state then lost track of the file. According to the state's characterization of the events, the case "fell through the cracks." When the prosecutor who had handled the case left the office, the case did not get placed in the "pile of pending matters" and ended up being ignored.

Four months after the entry of the judgment, the trial court inquired about the status of the restitution matter. The state then located the file and requested a hearing. At the hearing, defendant objected, asserting that, under the applicable statute, it was too late for a restitution hearing. The state responded with a request that the court extend the statutory deadline, arguing that the "miscommunication" in the prosecutor's office amounted to "good cause" for the extension. The trial court agreed. Following the hearing, the court entered a supplemental judgment ordering defendant to pay $3,019 in restitution.

On appeal, defendant renews her objection that the restitution order was untimely and that the state failed to

establish good cause for the delayed entry of the supplemental judgment. According to defendant, the state admits that it simply lost track of her file. Such admitted carelessness, she argues, cannot constitute good cause and, indeed, consistently has been determined by the courts not to constitute good cause in a number of similar contexts. The state responds that, although it has no explanation for the delay other than its failure to keep track of the file, the court properly found good cause because the victim did not cause the delay. In the alternative, the state contends that the trial court committed no error in granting the extension because the statutory deadline is merely an unenforceable, "hortatory safeguard to help ensure that crime victims receive prompt restitution."

■      Thus framed, the parties' arguments reduce to a dispute over what amounts to "good cause." It is tempting to treat the dispute as one committed to the sound discretion of the trial court. But, at least in this context, the parties' contentions do not focus on the manner in which the court exercised its discretion but, instead, on the court's interpretation of the meaning of the statutory standard itself. In reaching that conclusion, we find particularly instructive the Oregon Supreme Court's decision in *State v. Johnson*, 339 Or 69, 116 P3d 879 (2005). In that case, the court addressed what constitutes "good cause" for not dismissing a criminal action for violation of the speedy trial statute. *Id.* at 86. The court explained that, particularly when the relevant facts are not in dispute, what constitutes "good cause" within the meaning of the statute is a question of law, not discretion:

> "We acknowledge the temptation to treat indefinite terms like 'good cause,' 'sufficient reason,' and 'reasonable period of time' as calling for a subjective determination and, thus, as invoking personal judgment. However, it is clear that, when such terms appear in a statutory context, they are focused on real, albeit sometimes difficult to discern, legal standards: the *legislature's* view of what is 'good,' 'sufficient,' or 'reasonable.' As such, in the absence of a factual dispute, a determination that 'good cause' not to dismiss [under the speedy trial statute] invokes an objective standard and must be reviewed for legal error."

(Emphasis in original.)

In reviewing the statute, we attempt to discern the meaning of its terms most likely intended by the legislature, examining the text in context and, if necessary, legislative history and other aids to construction. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

ORS 137.106(1) (2003)[1] provides, in part:

"When a person is convicted of a crime * * * that has resulted in pecuniary damages, the district attorney shall investigate and present to the court, prior to the time of sentencing, evidence of the nature and amount of such damages. If the court finds from the evidence presented that a victim suffered pecuniary damages, in addition to any other sanction it may impose, the court shall:

"(a) Include in the judgment a requirement that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's pecuniary damages as determined by the court; or

"(b) Include in the judgment a requirement that the defendant pay the victim restitution, and that the specific amount of restitution will be established by a supplemental judgment based upon a determination made by the court within 90 days of entry of the judgment. In the supplemental judgment, the court shall establish a specific amount of restitution that equals the full amount of the victim's pecuniary damages as determined by the court. The court may extend the time within which the determination and supplemental judgment may be completed for good cause. * * *"

The statute was enacted in 2003. Before that, the law contained no time limitation on the entry of a judgment awarding restitution, requiring only that the court order "prompt payment of the restitution whenever possible." ORS 137.106(4) (2001).

■ Based on an examination of the text of the statute, this much is clear: First, and contrary to the suggestion of the state, there is nothing "hortatory" about it. It plainly establishes a 90-day deadline for the issuance of a supplemental

---

[1] Unless otherwise noted, references to ORS 137.106 are to the 2003 version of that statute.

judgment ordering restitution. The statute provides that the court "shall" comply with that deadline in the absence of good cause. Particularly in light of the fact that the statute was amended in 2003 to change the law from requiring the court "promptly" to award restitution merely "whenever possible" to imposing a specific time period, we are at a loss to understand the basis for a conclusion that the legislature did not intend that limitation to be given its plain and natural effect.

■        Second, the statute provides that the trial court may delay its determination only if two conditions exist, namely, that (1) there is a cause for the delay and (2) that cause is "good" within the meaning of the statute. In this case, there is no dispute about the cause for the delay, namely, the state lost track of defendant's case file. The sole remaining question is whether that cause—the state's losing track of a case file—is "good."

To resolve that question, however, we need not attempt to do what Plato could not and determine the meaning of the term "good" in the abstract. The statutory term in this case is employed in a particular context—"good cause." That phrase actually is quite common to Oregon legislation.

For example, the Agreement on Detainers provides that a prisoner in one state must be brought to trial in another state within 180 days after the prisoner requests trial "[p]rovided, that for good cause shown in open court, * * * the court having jurisdiction of the matter may grant any necessary or reasonable continuance." ORS 135.775, Article III(a). Similarly, ORS 135.765(2)(a) provides for dismissal of a prosecution of an inmate in cases in which the inmate's statutory speedy trial rights are violated, except when the delay was, among other things, the result of a grant by the court of a continuance "for good cause shown." Likewise, OEC 803(18a)(b) provides that the admissibility of hearsay statements concerning an act of abuse depends on, among other things, the proponent providing notice of an intention to offer the statement no later than 15 days before trial, "except for good cause shown."

Those good cause provisions have been interpreted by the courts of this state *not* to include prosecutorial inadvertence or neglect. Construing the Agreement on Detainers,

for example, this court stated that "inattentiveness to the passage of time on the part of the trial court and prosecutor do not constitute good cause for the continuance granted by the trial court" to set a trial date outside the statutory deadline. *State v. Arwood*, 46 Or App 653, 655, 657, 612 P2d 763 (1980); *accord State v. Wideman*, 203 Or App 359, 364-65, 124 P3d 1271 (2005) (reaching the same conclusion under the same statute when the state simply could not explain its delay). *See also State v. Iverson*, 185 Or App 9, 15, 57 P3d 953 (2002), *rev den*, 335 Or 655 (2003) (state conceded that its neglect in violating notice requirement was not good cause under OEC 803(18a)(b)).

■ Those other statutory references to "good cause" and the cases construing them existed before the legislature decided to add a time limitation and "good cause" exception to ORS 137.106 in 2003. We ordinarily assume that the legislature is aware of other statutes *in pari materia* and case law interpreting them existing at the time of enactment. *Joshi v. Providence Health System*, 342 Or 152, 158, 149 P3d 1164 (2006) ("We assume that, in using the term 'caused,' the legislature intended to incorporate the legal meaning of that term that this court has developed in its cases."); *Weber and Weber*, 337 Or 55, 67, 91 P3d 706 (2004) ("[T]his court presumes that the legislature enacts statutes in light of existing judicial decisions that have a direct bearing upon those statutes.").

■ The state acknowledges the fact that the courts have consistently concluded that a prosecutor's carelessness does not constitute "good cause" for delay. It argues that we should nevertheless give a different gloss to the term "good cause" as it is used in ORS 137.106(1)(b) because the legislative history demonstrates that the purpose of the statute was to ensure prompt restitution to crime victims. According to the state, in light of that purpose, we should conclude that any delay that was not caused by a crime victim is "good cause" within the meaning of the statute, whether the delay was caused by the state's careless or even intentional misconduct. We reject the state's contention for at least two reasons.

First, the state identifies nothing in the wording of the statute itself that suggests that the legislature intended

"good cause" to mean anything other than what it ordinarily means. To the contrary, as we have noted, in amending the statute in 2003, the legislature employed wording that has acquired a fairly common meaning, one that is contrary to the state's proposed construction in this case. The legislature certainly is aware of ways to define specifically what it wants "good cause" to mean. In ORS 136.295(4)(b), for example, the legislature listed specific circumstances that constitute "good cause" to extend a 60-day deadline for trying a defendant who is in custody. It did not do so in ORS 137.106. It certainly would have been easy enough for the legislature to take a similar approach when it amended ORS 137.106 and expressly define "good cause" to mean any cause other than the action of the victim, as the state now proposes. It did not do so, however. And we assume that it made that choice intentionally. *See, e.g.*, *State v. Fries*, 212 Or App 220, 229, 158 P3d 10, *rev allowed*, 343 Or 363 (2007) ("The legislature knows how to create exemptions to criminal responsibility for those who knowingly have physical possession of controlled substances under ORS 475.840(3); because it did not create an exemption that applies to the circumstances of [the] defendant in this case, we must infer that the legislature's omission was deliberate.").

■        Second, even assuming for the sake of argument that it is appropriate to examine legislative history at this juncture, and even further assuming that we would agree with the state's contention that the upshot of that enactment history is that the legislature wanted to ensure timely restitution for the victims of crimes, the fact remains that such a purpose in no way necessitates reading the statute in the novel way that the state proposes. (Indeed, we take it as obvious—even without reference to the legislative history—that the legislature wanted to ensure more timely restitution for crime victims; as we have noted, that much is easily gleaned from the change in wording from the earlier statute so that it now imposes a specific, 90-day deadline.) It simply proves too much to draw from that general policy the conclusion that the legislature intended to confer on the state a free pass to delay in proving the amount of restitution for literally any reason—from inadvertence to outright misconduct—so long as the victim did not participate in the delay. Nothing in the portions of

the legislative history on which the state relies remotely suggests that.

As we have noted, the only cause for the delay in this case was the state's carelessness. We conclude that, as a matter of law, that does not constitute "good cause" within the meaning of ORS 137.106(1)(b). The trial court erred in reaching a contrary conclusion and in awarding restitution after the statutory deadline.

Supplemental judgment ordering restitution vacated; otherwise affirmed.