Argued and submitted April 11, affirmed November 2, 2011, petition for review denied April 5, 2012 (351 Or 678)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## ADAM LEE UNIS,
*Defendant-Appellant.*

Jackson County Circuit Court
083768FE; A143701

264 P3d 1286

Bear Wilner-Nugent argued the cause and filed the brief for appellant.

Justice J. Rillera, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Rosenblum, Senior Judge.

ROSENBLUM, S. J.

.

**ROSENBLUM, S. J.**

Defendant, who was convicted of first-degree theft and attempted first-degree theft, argues that the trial court erred in imposing restitution. The judgment of conviction was entered on December 15, 2008, a judgment imposing $851.15 in restitution was entered on February 3, 2009, and ultimately, the court determined the proper amount of restitution to be imposed—$2,570.13—on August 31, 2009, and later entered an amended judgment to that effect. Defendant asserts that the court erred in determing that there was "good cause" to impose restitution beyond the 90-day timeline established by ORS 137.106(1)(b). For the reasons set forth below, we affirm.

The procedural facts are somewhat complicated, but we recount them in detail in order to demonstrate how the trial court ultimately reached the correct conclusion here regarding good cause. On December 15, 2008, defendant pleaded guilty, was sentenced, and the court indicated that restitution would be imposed. A judgment was entered on that date indicating that restitution was to be determined pursuant to ORS 137.106. On January 21, 2009, the state moved for an amended judgment awarding restitution to the victim in the amount of $851.15. The trial court entered a restitution judgment awarding that amount on February 3, 2009. On February 13, 2009, defense counsel filed a motion requesting a restitution hearing.[1] The court scheduled the hearing for April 13, 2009, but defense counsel moved to postpone the hearing until May 11, 2009, due to a scheduling conflict. On May 11, 2009, the prosecutor moved to postpone the hearing "for the reason that more time is needed by the parties to reach an agreement regarding the amount of restitution." Defendant did not object to that motion, which the court granted. On July 3 and again on July 20, the hearing was postponed at the request of defense counsel, once due to scheduling conflicts and once because "additional time is

---

[1] Although it is not clear from the record, it appears that the trial court treated defendant's motion as a motion to amend the February 3 judgment, *see* ORS 138.083, and to hold a hearing to determine the proper amount of restitution. The parties do not argue that the existence of that judgment is pertinent to the issue presented here, and we express no opinion as to that.

needed for further investigation." On July 21, the state filed a motion for an amended restitution judgment, seeking a greater amount than originally sought, stating that it reflected "a change in the amount of restitution based on additional information recently provided to the state." On August 14, 2009, defendant filed a motion to withdraw his request for a hearing, implicitly acknowledging that the $851.15 restitution ordered in the February 3 judgment was proper. The court denied that motion.

The court scheduled the hearing for August 24, 2009, and defense counsel requested an additional set-over due to defendant being ill. The hearing finally was held on August 31, 2009, at which point the court determined $2,570.13 to be the correct amount of restitution.[2]

At the hearing, the prosecutor explained that, after the initial restitution judgment was entered, the victim had contacted the district attorney's office and explained that $851.15 was "not the right amount," and that he kept trying to convey that information until "at least mid-spring" and tried to offer supplemental information on the proper amount. The prosecutor explained that both she and defense counsel had initially believed that the victim had recovered some of the stolen goods, but the victim later communicated that the goods were not returned or were not usable. The prosecutor further indicated that the victim had conveyed this information to the state's restitution specialist who had been assigned to the case but that the restitution specialist had become terminally ill with a brain tumor, and, by April 2009, "she was making errors" and "she was not getting everything done." The trial court found that the restitution specialist's impairment of health constituted "good cause" for the state's delay in seeking the increased amount of restitution.

On appeal, defendant asserts that the delay in concluding these restitution proceedings was not for "good cause," arguing that, at the time the state made its initial

---

[2] The second amended judgment imposing restitution was not entered until October 5, 2009. The focus, however, is on when the restitution was "determined by the court," ORS 137.106(1)(b), and defendant acknowledges that that was done at the restitution hearing.

request for $851.15 in restitution, the state's restitution specialist "was not evidently suffering any obvious effects from her brain tumor." He goes on to assert that, by the time the restitution specialist's illness became apparent, it was April and "the [90-day] deadline had passed."

Defendant asserts that the restitution specialist's illness here was equivalent to the situation in *State v. Biscotti*, 219 Or App 296, 298, 182 P3d 269 (2008), in which the prosecutor who was handling the case "left the office, the case did not get placed in the 'pile of pending matters,' and ended up being ignored." Defendant misunderstands *Biscotti*.

In *Biscotti*, no restitution request was filed until approximately four months after the judgment of conviction was entered, and the state acknowledged that that was because, due to personnel issues, the case had been "ignored." *Id.* at 298. There, we noted that "good cause" does *not* include prosecutorial inadvertence or neglect." *Id.* at 301 (emphasis added). We concluded that "the only cause for the delay in this case was the state's carelessness." *Id.* at 304. *See also State v. Murrell*, 242 Or App 178, 255 P3d 574 (2011) (where prosecutor left the office after trial and case was ignored until the ninetieth day after the entry of judgment of conviction, no "good cause" was shown for delayed entry of a judgment imposing restitution).

This case stands in stark contrast to *Biscotti* and *Murrell*. Here, at no point was the case neglected by the prosecutor's office. The initial motion for entry of a restitution judgment was filed a month after the entry of judgment (and, in fact, as noted above, restitution was actually awarded in under two months). After that, defendant raised an issue concerning the amount of restitution by filing a motion requesting a hearing, and, as noted above, the court initially scheduled a hearing for April, which was later postponed at defendant's request. Defendant insists that, because the hearing was scheduled for April, outside of the 90-day period, there was no "good cause" in this case. We disagree with defendant's assertion that the illness of the restitution specialist is akin to prosecutorial neglect or carelessness. The record supports an inference that, although the problems

with the restitution specialist's work did not become apparent to the prosecutor's office until April, she was, in fact, having difficulties caused by her condition before that time, as shown by the victim's failed attempts to explain to her that the amount of restitution originally requested (and the court subsequently awarded) was incorrect. Given those circumstances, we agree with the trial court that the delay in determining the proper amount of restitution in this case was for "good cause."

Finally, we note that the vast majority of the delay that occurred after April was either requested by or consented to by defendant (*e.g.*, the prosecutor's unopposed request for a continuance while the parties attempted to reach an agreement as to the restitution amount).

In sum, resolving the restitution issues in this case took longer than usual. However, this is not a case of prosecutorial neglect. At every point after the entry of the judgment of conviction, the restitution issue was being actively litigated by both parties. The 90-day timeline established by ORS 137.106(1)(b) does not establish a bright-line rule that negates the possibility of a restitution determination more than 90 days after judgment is entered. Rather, as we recognized in *Biscotti*, the 2003 amendments to ORS 137.106 altered the statute from a general provision requiring that the court order "prompt payment" of restitution "whenever possible," to a firm requirement that the court impose restitution in the full amount of the victim's economic damages and do so within a specific time, unless "good cause" was shown to extend that timeline. *Biscotti*, 219 Or App at 300-01. Given the legislature's apparent intent to provide crime victims with a timely remedy, we reject defendant's suggestion that we should interpret "good cause" in such a narrow manner as to undermine the legislative goals and provide the victim here with less than what he is entitled to.

Affirmed.