Submitted April 20, affirmed November 2, petition for review denied
December 29, 2011 (351 Or 507)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## ROQUE TOMAS MARTINEZ,
*Defendant-Appellant.*

Malheur County Circuit Court
08121860C1; A143343

265 P3d 92

Andrew S. Chilton and Chilton & Galli, LLC, filed the
brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams,
Solicitor General, and Stacey RJ Guise, Senior Assistant
Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge,
and Rosenblum, Senior Judge.

ROSENBLUM, S. J.

**ROSENBLUM, S. J.**

Defendant, who was convicted of second-degree assault after a guilty plea, argues that the trial court erred in imposing $1,589.90 in restitution on the ground that the restitution determination was not made until over six months after the judgment of conviction was entered. In particular, defendant argues that the court erred in finding that there was "good cause" to enter the order beyond the 90-day time-line established by ORS 137.106(1)(b). As explained below, we agree with the trial court that there was good cause to enter the delayed restitution order in this case. Accordingly, we affirm.

Defendant was sentenced on February 9, 2009, and a judgment was entered on that date. At sentencing, the prosecutor noted that the victim had not requested restitution but that he had "up to 90 days to submit it if there is any." Accordingly, the court told defendant, "I will order that you pay restitution to be—in an amount to be determined at a later date if—if that is requested, but that will have to occur within 90 days."

On May 5, 2009, the eighty-fifth day after the judgment of conviction was entered, the state filed a motion requesting an amended judgment awarding $2,914.51 in restitution to the victim. A hearing was held on that motion on August 17, 2009. At the August 17 hearing, the court questioned why it had taken so long to get to a hearing. The prosecutor made the following statements:

> "The state had not completed its restitution investigation. [T]he victim * * * had not submitted all of the paperwork regarding medical expenses, and also he was filing a claim with the [victim's compensation fund] that had yet to be processed, and that is why the state waited until May 5 to file the motion, because there was that claim pending, and if it was going to be accepted, we wanted to make sure the judgment was read correctly to provide restitution to [the victim's compensation fund] so we didn't have it going to [the victim] when it should've been going to [the victim's compensation fund]. It's my understanding that claim was never accepted, so we filed the motion on behalf of [the victim]. * * *

> "[The victim,] we didn't subpoena. I don't believe he would've came voluntarily anyways, or even with a subpoena."

The court then asked, "You're trying to get restitution for medical bills [the victim] incurred that he doesn't care enough about to appear or cooperate with us?" The prosecutor replied, "He is not going to cooperate." In arguing that good cause had not been shown to enter a restitution award after the ninetieth day, defense counsel noted that all of the documentation of medical expenses was dated from December, January, and February, long before the 90-day deadline.

Counsel noted that she had not been appointed to represent defendant on the restitution matter until the end of May, then counsel and the court then discussed the fact that they had been unable to schedule the hearing for one date in June and three dates in July because defendant had been moved within the prison system and his appearance could not be arranged for those dates.

The court then stated that the state "did get it in within the 90 days that the court set, and the delay since that time appears to be for good cause." In particular, the court remarked, the delay was due to making sure that defendant "could be present, and that he could have counsel."

Defendant asserts on appeal that none of the above amounts to "good cause" under ORS 137.106(1)(b). We review the trial court's determination of "good cause" for errors of law. *State v. Biscotti*, 219 Or App 296, 299, 182 P3d 269 (2008). ORS 137.106(1) provides, in part:

> "When a person is convicted of a crime * * * that has resulted in economic damages, the district attorney shall investigate and present to the court, prior to the time of sentencing, evidence of the nature and amount of the damages. If the court finds from the evidence presented that a victim suffered economic damages, in addition to any other sanction it may impose, the court shall include one of the following in the judgment:

> "* * * * *

> "(b)  A requirement that the defendant pay the victim restitution, and that the specific amount of restitution will

be established by a supplemental judgment based upon a determination made by the court within 90 days of entry of the judgment. In the supplemental judgment, the court shall establish a specific amount of restitution that equals the full amount of the victim's economic damages as determined by the court. The court may extend the time within which the determination and supplemental judgment may be completed for good cause."

As we explained in *Biscotti*, 219 Or App at 303, the phrase "good cause" as used in ORS 137.106(1)(b) means "what it ordinarily means." That is, "good cause provisions have been interpreted by the courts of this state *not* to include prosecutorial inadvertence or neglect." *Id.* at 301 (emphasis in original). Moreover, "inattentiveness to the passage of time on the part of the trial court and prosecutor do not constitute good cause[.]" *State v. Arwood*, 46 Or App 653, 657, 612 P2d 763 (1980).

In this case, the filing on the eighty-fifth day occurred because the prosecutor was awaiting a decision from the victim's compensation program about whether they would be covering the victim's damages, in order to know who would be entitled to recover the restitution from defendant. *See generally* ORS 137.106(4)(C) (defining "victim" for purposes of the restitution statutes to include victim's compensation program). Awaiting information that is highly pertinent to the request for restitution is not, as defendant suggests, the equivalent of "prosecutorial inadvertence or neglect." Thus, although the restitution was sought toward the end of the 90-day period, the reason for that was a legitimate one. *Compare State v. Murrell*, 242 Or App 178, 181, 255 P3d 174 (2011) (filing on the ninetieth day because the prosecutor who had handled the criminal case had left the office and "the case had 'fall[en] through the cracks' " was not a good cause for the delay).

Moreover, the delay after the state had filed its motion was due to appointing new counsel for defendant and ensuring defendant's availability for the hearing. Thus, the record establishes that there were valid reasons—the need to appoint counsel and difficulties in arranging the presence of defendant, who was being moved around within the state

prison system—for the subsequent delay in holding the hearing.

Finally, to the extent that the record reflects that the victim did not want to "cooperate," we understand that to be an assertion that he did not wish to appear at the restitution hearing. It is clear on this record, however, that regardless of his wish not to appear, he had provided the necessary documentation to support a restitution award, both to the prosecutor and to the victim's compensation program. Thus, in these circumstances, the victim's reluctance cannot be said to have caused the delay at issue. Rather, the initial delay was because the prosecutor was awaiting information from the victim's compensation program, and the subsequent delays were due to the need to secure new counsel for defendant and to arrange for his presence at the hearing.

Affirmed.