Argued and submitted May 28, reversed and remanded for entry of judgment of dismissal December 30, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

WILLIAM MICHAEL STORKUS,
aka William Storkus,
*Defendant-Appellant.*

Umatilla County Circuit Court
18CR01681; A168771

479 P3d 320

Defendant appeals from a judgment of conviction for assaulting a public safety officer, ORS 163.208, stemming from his assault of a correctional officer while incarcerated at Two Rivers Correctional Institution. Defendant invoked his statutory right under ORS 135.760 and ORS 135.763 to a speedy trial by sending the trial court a request to have a trial within 90 days of the request. Due to a calendaring error, however, the trial court held defendant's trial 93 days after his request was received. Defendant moved to dismiss the case, and the trial court denied the motion concluding that there was good cause for the delay. On appeal, the parties dispute whether the trial court erred in finding good cause for the delay. *Held*: The trial court erred in concluding that there was good cause to delay defendant's trial. The state has the responsibility to make a showing of the difficulty or impracticability of trying defendant within the statutory timeframe. Here, the state's submission of a copy of the court's calendar showing approximately 1,300 docket entries without further explanation or additional evidence describing the difficulty or impracticability of holding defendant's trial does not make a sufficient showing of good cause.

Reversed and remanded for entry of judgment of dismissal.

Eva J. Temple, Judge.

Matthew Blythe, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Philip Thoennes, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

POWERS, J.

Reversed and remanded for entry of judgment of dismissal.

**POWERS, J.**

Defendant appeals from a judgment of conviction for assaulting a public safety officer, ORS 163.208, stemming from his assault of a correctional officer while incarcerated at Two Rivers Correctional Institution (TRCI). Defendant invoked his statutory right to a speedy trial by sending the trial court a request to have a trial within 90 days of the request. Due to a calendaring error, however, the trial court held defendant's trial 93 days after his request was received. Defendant moved to dismiss the case, and the trial court denied the motion concluding that there was good cause for the delay. On appeal, the parties dispute whether the trial court erred in determining that there was good cause for the delay. For the reasons explained below, we conclude that the trial court erred in concluding that there was good cause for the delay in scheduling defendant's trial. Accordingly, we reverse and remand for entry of a judgment of dismissal.

When a case involves the adult in custody speedy-trial statutes, we review a trial court's determination as to whether "good cause" existed for errors of law. *State v. Tatarinov*, 211 Or App 280, 285, 155 P3d 67, *rev den*, 342 Or 727 (2007). We are bound by the trial court's factual findings if there is any evidence to support them. *State v. Neal*, 260 Or App 753, 755, 320 P3d 664 (2014). We recount the facts consistently with those standards.

The facts are procedural and undisputed. Defendant, an adult in custody at TRCI, was indicted for assaulting a correctional officer, and he subsequently submitted written notice requesting a trial within 90 days under ORS 135.760 and ORS 135.763.[1] ORS 135.760 provides:

"(1)  Any adult in the custody of the Department of Corrections or of the supervisory authority of a county pursuant to a commitment under ORS 137.124(2) against whom there is pending at the time of commitment or against whom there is filed at any time during imprisonment, in any court of this state, an indictment, information

---

[1] After defendant committed the assault, the legislature amended the speedy-trial statutes to replace the word "inmate" for the phrase "adult in custody." Or Laws 2019, ch 213, §§ 15-17. Because that amendment does not affect our analysis, we refer to the current version of the statutes throughout the opinion.

or criminal complaint charging the adult in custody with the commission of a crime, may give written notice to the district attorney of the county in which the adult in custody is so charged requesting the district attorney to prosecute and bring the adult in custody to trial on the charge forthwith.

"(2)   The notice provided for in subsection (1) of this section shall be signed by the adult in custody and set forth the place and term of imprisonment. A copy of the notice shall be sent to the court in which the adult in custody has been charged by indictment, information or complaint."

ORS 135.763 provides:

"(1)   The district attorney, after receiving a notice requesting trial under ORS 135.760, shall, within 90 days of receipt of the notice, bring the adult in custody to trial upon the pending charge.

"(2)   The court shall grant any reasonable continuance with the consent of the defendant. Notwithstanding the defendant's lack of consent, the court may grant a continuance on motion of the district attorney or on its own motion, for good cause shown. The fact of imprisonment is not good cause for the purposes of this subsection."

The court received the notice on March 19, 2018. When defendant appeared for arraignment, however, the court mistakenly stated that it had received the notice on March 22. Based on that mistaken impression, the court set a trial date for June 20, which is 90 days from March 22, but 93 days from March 19.

At the trial readiness hearing on June 11, which was six days before the end of the 90-day period, defendant raised the issue of the timeliness of his trial, specifically arguing that he had been denied a "fast and speedy trial."[2] The court, upon reviewing the calendar, discovered the error and noted that it would be unavailable for any earlier date. The court explained that the trial would "have to be before a different [j]udge a week earlier if we're [going to] have it within 90 days." At that point, the state suggested that the court extend the deadline of the trial for good cause, and that "the [c]ourt's docket would be good cause for extending

_____

[2] Defendant's primary counsel was unavailable for the readiness hearing and defendant was represented by substitute counsel.

it by the few days we're speaking of." The court concluded that the trial date would not be changed: "So, I guess we've got it on for the 20th. That's the earliest I can do it, and we're set. So, we'll leave it there."

Defendant moved to dismiss the case for lack of a speedy trial. The trial court held a hearing on defendant's motion on June 20, which was the day that trial was set to begin. At the hearing, the state conceded that March 19 was the operative date for calculating the speedy-trial deadline, that defendant had not consented to a continuance, and that the state had not moved for a continuance. The state argued that the trial court had continued the case on its own motion at the readiness hearing and further contended that there was good cause to do so. The state highlighted three reasons to suggest that there was good cause: First, the state argued that "overcrowded dockets may constitute good cause for continuing a case past a statutory speedy trial deadline," and offered a copy of the court's docket from March 19 to June 20 in support of that assertion. The docket, the state noted, had approximately 1,300 entries. Second, the state asked the court to take judicial notice of the "geographical situation" in Umatilla County. The state described that situation:

> "We have four courtrooms. We have one judge assigned to each criminal courtroom. Two of those courtrooms are here in Hermiston. Two of those courtrooms are in Pendleton, located approximately 30 miles away. And, each of the courtrooms is scheduled very similar to our own courtroom 4."[3]

Third, and finally, the state highlighted the fact that the trial judge was in a judicial training seminar "when the 90-day period actually took place[.]" Taken together, the state argued, there was "more than enough good cause" for the court to determine that it "was improbable to get this case on the docket any sooner than today."

The court denied defendant's motion:

> "As you know, at trial readiness on June 11th, you brought up your speedy trial motion. [Defendant's primary counsel] was not in the courtroom that day. He had another colleague covering your case. You brought that up yourself.

---

[3] The record is silent as to whether the court ultimately took judicial notice of that description.

And frankly, that is the first time that I personally counted to 90 on your file. So, I, typically say to my assistant, this is a 90-day speedy trial request. We need to make sure that we set this within 90 days of X. I believe I know what happened.

"When we received your document, it was date stamped March 19th. It was entered March 22nd. So, when my clerk when to count to 90, she counted from March 22nd. So, we are indeed off by three days."

The court further noted that it had "agreed with [defendant] that we should try to move [the trial] up if we could," but that another trial had already been set and that case took priority over defendant's case.[4] While describing its reasoning, the court noted its own scheduling conflict:

"I had to go to Minneapolis for a training that I was not able to cancel or change, and I didn't have another judge available to take over for me. So, I could not move your trial forward.

"I am not going to grant your dismissal. I am going to say that my docket and my decision to have my other trial first was good cause to set yours out."

Defendant then proceeded to a jury trial, which found him guilty as charged. This appeal followed.

On appeal, defendant challenges the denial of his motion to dismiss, arguing that the trial court erred in concluding that there was good cause because the state did not show "that it would have been impracticable to hold defendant's trial within the 90-day period if the prosecutor or the trial court had properly calculated the speedy-trial deadline at the beginning of the case." That is, defendant argues that the state should have made a showing that it was impracticable to try defendant within 90 days of receiving defendant's request, rather than show that it was impracticable to try defendant after the discovery of the calendaring error. Defendant further argues that "there was no evidence that defendant's trial could not have been held in a different courtroom with a different judge."

---

[4] The state submits that the trial with priority over defendant's occurred June 6 to 8 and had finished by June 11, the date of the trial readiness hearing. Thus, the state concedes that the other trial "could not factor in the 'good cause' analysis."

The state remonstrates that the trial court did not err in concluding that there was good cause because it was impracticable to try defendant after the discovery of the calendaring error and further argues that the state made a showing of the difficulty or impracticability of trying defendant within the 90-day period. As explained below, we conclude that the good-cause analysis accounts for the entire 90-day period, not just the period after the discovery of the calendaring error, and we further conclude that the trial court erred in determining that there was good cause.

To begin, we understand the state to argue that, because the calendaring error was discovered six days before the deadline, the preceding 84 days should not be considered in the good cause inquiry. Thus, according to the state's argument, we should narrow our analysis of whether there was good cause to delay the trial to only the days after the discovery of the calendaring error. We reject that argument. Bringing an adult in custody to trial "within the statutory period is the responsibility of the state." *Neal*, 260 Or App at 760. Once the district attorney receives a speedy-trial request, the statutory framework "places responsibility on the district attorney to bring an [adult in custody] to trial." *State v. Benner*, 253 Or App 164, 167, 288 P3d 1016 (2012) (internal quotation marks and citation omitted). "The state cannot abdicate its responsibility to control a prosecution. It must take affirmative action to bring a defendant to trial within 90 days, request a continuance for good cause or suffer a dismissal under ORS 135.765."[5] *State v. Person*, 113 Or App 40, 44, 831 P2d 700 (1992), *aff'd*, 316 Or 585, 853 P2d

---

[5] ORS 135.765 provides that the remedy for a violation of ORS 135.760 and ORS 135.763 is dismissal:

"(1) On motion of the defendant or the counsel of the defendant, or on its own motion, the court shall dismiss any criminal proceeding not brought to trial in accordance with ORS 135.763.

"(2) The section shall not apply:

"(a) When failure to bring the adult in custody to trial within 90 days after the district attorney receives notice under ORS 135.760 was the result of motions filed on behalf of the adult in custody, or of a grant by the court of a continuance on motion of the district attorney or on its own motion, for good cause shown; or

"(b) When the adult in custody is unavailable for trial, other than by imprisonment, or because of other pending criminal proceedings against the adult in custody."

813 (1993). Therefore, because the state has a duty to bring an adult in custody to trial within the statutory period, determining whether there is good cause must similarly look to the entire 90-day period. If we were to accept the state's argument that the good-cause analysis is limited to only the period after a scheduling error was discovered, we would undercut the state's statutory responsibility to control a prosecution. *See Neal*, 260 Or App at 761 (describing that the state has "a duty to bring defendant to trial within the statutory timeframe"). In short, to determine whether there is good cause shown for purposes of a defendant's statutory speedy-trial rights, a court must evaluate the entire statutory period. In this case, that means that the analysis must include both the 84 days preceding discovery of the calendaring error and the remaining six days before the expiration of the 90-day period.

Having determined that the entire 90-day period should be considered, we turn to whether the trial court erred in determining that there was good cause to schedule the trial beyond the statutory deadline. Although the phrase "good cause" is used repeatedly as a statutory concept, *see State v. Biscotti*, 219 Or App 296, 301, 182 P3d 269 (2008) (so recognizing), there is no "precise, all-encompassing definition of good cause" in the speedy-trial context. *Neal*, 260 Or App at 760 (internal quotation marks and citation omitted). Appellate court decisions, however, have delineated some of the boundaries of good cause. For example, we observed in *Neal* that "circumstances such as overcrowded dockets, the unavailability of a prosecution witness, and the state's suspension of funding for indigent defense have all been found to constitute good cause." *Id.* (citing *Tatarinov*, 211 Or App at 285-86, 289). Conversely, "good cause provisions have been interpreted by the courts of this state not to include prosecutorial inadvertence or neglect." *Biscotti*, 219 Or App at 301-02 (summarizing cases interpreting "good cause" as used in various statutes, including ORS 135.775 and ORS 135.765(2)(a) (emphasis omitted)).

When presented with the question of whether good cause exists to delay a trial for an adult in custody, "it is the state's responsibility to make at least some showing of the difficulty or impracticability of trying an [adult in

custody] within the statutory period[.]" *Neal*, 260 Or App at 762 (emphasis omitted). Here, in addition to focusing on the time after the calendaring error was discovered, the state asserts that it made "some showing" of the difficulty or impracticability of conducting defendant's trial when the prosecutor offered evidence of the courtroom schedule, noting that "each of the [other three] courtrooms is scheduled very similar to our own courtroom 4." In the state's view, that evidence, combined with the trial judge traveling the week prior to defendant's scheduled trial, justified the trial court's determination of good cause.

As an initial matter, the good-cause determination includes the state's statutory duty described above to bring an incarcerated defendant to trial within the statutory period. Where, as here, defendant's trial date was initially scheduled outside of the statutory period, the state is not entirely blameless for that scheduling error given its statutory responsibility. *See Neal*, 260 Or App at 762; *Benner*, 253 Or App at 167. In any event, we need not decide whether that calendaring error, standing alone, would have been a sufficient basis for a good-cause determination because the calendaring mistake was identified before the 90 days had run. With that background in mind, we turn to what transpired when the calendaring error was discovered and the state's showing of the difficulty or impracticability of holding defendant's trial within the statutory period.

During the discussion at the trial readiness hearing, the trial court suggested the possibility of having the trial "before a different [j]udge a week earlier" than planned in order to hold the trial within the statutory period. Rather than explore that possibility, however, the state immediately suggested that the court's docket would be good cause for holding the trial outside of the statutory period. The state did not, at that time, point to any specifics about the court's docket, and the trial court agreed to keep the date that was beyond the statutory period.

Then, during the hearing on defendant's motion to dismiss, the state offered into evidence a copy of the court's calendar from March 19 to June 20, which showed approximately 1,300 entries. The entries include a wide variety of

hearings such as arraignments, probation violations, change of pleas, and trial readiness hearings for cases involving violations, misdemeanors, and felonies. Defendants with multiple cases appear as separate entries. There are also a number of civil matters listed, including pretrial conferences for tort cases, trials for landlord-tenant disputes, child custody and other domestic relations proceedings, and hearings related to restraining orders, such as a Family Abuse Prevention Act (FAPA) protective orders. The calendar shows that the court has a demanding docket like many courts across Oregon. What is not apparent from that evidence is whether the hearings are scheduled to last minutes, hours, or days. Nor is it clear from the printout whether a criminal defendant is incarcerated or not. Although exhaustive details on each of the calendar entries are not needed to make a good-cause determination, something more is required to determine how an in-custody felony trial fits into any case-prioritization calculation.

Importantly, absent from the documentary evidence showing the existence of a panoply of hearings is any explanation of why those particular hearings caused the trial court any cognizable difficulty or made it impracticable to hold defendant's trial within the statutory period. There is no doubt that trial courts across Oregon have crowded dockets; indeed, many of them are overcrowded and courts are in serious need of additional resources to handle the immense docket pressure so that Oregonians can receive the timely decisions that they rightly deserve. That generalized assertion, however, without further explanation or additional evidence describing the difficulty or impracticability of holding defendant's trial does little to establish a showing of good cause. *Cf. State v. Hall*, 265 Or App 279, 285, 335 P3d 311 (2014) (explaining that "for limitations on judicial resources to justify pretrial delay, the record in a case must demonstrate precisely how an overcrowded docket contributed to the period of delay at issue" (internal quotation marks and citation omitted)).

Relatedly, there was no explanation why another judge in one of the other courtrooms was unable to hear defendant's case. Although the state suggested that the other courtrooms have a similar schedule, there was no evidence

or showing why it was difficult or otherwise impracticable. *See Neal*, 260 Or App at 761 ("[T]he parties could have examined the court's docket and made a determination whether it was practicable to reschedule defendant's trial ***, perhaps by rescheduling some other, less-pressing business for a later date."). That is especially true when the court suggested that another judge may have been available to take over when the calendaring error was first raised.

In sum, the trial court erred in concluding that there was good cause to delay defendant's trial beyond the 90-day statutory deadline because the state did not make a sufficient showing for good cause.

Reversed and remanded for entry of judgment of dismissal.